# Hughes, Appellant, *v.* Leonard.

199     123
205    ³298
206     ² 86

199   123
f225  ²3J5
225   ³400

*Negligence—Master and servant—Evidence.*

In an action by an employee against his employer to recover damages for personal injuries, binding instructions for defendant are proper where it appears that at the time of the accident plaintiff was employed on the deck of a vessel belonging to a third party in unloading piles which the defendants had purchased, and that in the course of his employment a short guy rope, part of the tackle of the vessel, broke, allowing the boom used in unloading the piles to swing around and tighten another rope attached to it, which threw the plaintiff into the hold of the vessel and injured him.

*Negligence—Fellow servants—Vice principal.*

A vice principal for whose negligence an employer will be liable to other employees must be either, first, one in whom the employer has placed the entire charge of the business, or of a distinct branch of it, giving him not merely authority to superintend certain work, or certain workmen, but

control of the business, and exercising no discretion or oversight of his own; or secondly, one to whom he delegates a duty of his own which is a direct, personal and absolute obligation, from which nothing but performance can relieve him.

A man employed by a firm engaged in building wharves and placed in charge of ten or twelve men with a pile driver is not a vice principal, but is a fellow servant of the men under his charge.

Argued Jan. 21, 1901. Appeal, No. 164, Jan. T., 1900, by plaintiff, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1896, No. 592, on verdict for defendant, in case of Benjamin W. Hughes v. H. R. Leonard, P. R. Foley and W. G. Ritner, trading as Leonard, Foley & Company. Before McCOLLUM, C. J., MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before AUDENRIED, J.

The facts appear by the opinion of the Supreme Court.

The court directed a verdict in favor of defendants.

Verdict and judgment for defendants.

*Error assigned* was in directing verdict for defendants.

*S. Morris Waln*, with him *John W. Wescott*, for appellant.— The master must not expose his servant to unnecessary dangers, either from defective tools or the place in which he requires him to operate: Tissue v. Baltimore & Ohio R. R. Co., 112 Pa. 91; Prescott v. Ball Engine Co., 176 Pa. 459; Lewis v. Seifert, 116 Pa. 647.

Sprague was superintendent or vice principal for defendant: Mullan v. Phila. & Southern Mail Steamship Co., 78 Pa. 25; Lewis v. Seifert, 116 Pa. 647.

The defendants are liable because the position on the barge in which they placed the plaintiff to work was a dangerous position: Dover v. Delaware & Hudson Canal Co., 164 Pa. 17; Trainer v. Phila. & Reading R. R. Co., 137 Pa. 149; Gulf, etc., R. R. Co. v. Delaney, 55 S. W. Repr. 538.

*Frank P. Prichard*, with him *James Wilson Bayard*, for appellees.—If the master supplies proper tools and materials, and puts a gang of workmen employed upon a particular piece of

work in charge of a competent foreman, he is not responsible for unforeseen dangers developing during the progress of the work, simply because the foreman was negligent in not preventing or guarding against them: Ross v. Walker, 139 Pa. 42; Kinney v. Corbin, 132 Pa. 341; Capasso v. Woolfolk, 163 N. Y. 472; O'Brien v. American Dredging Co., 53 N. J. Law, 291; Curley v. Hoff, 62 N. J. Law, 758; Johnson v. Boston Tow Boat Co., 135 Mass. 209; Alaska Mining Co. v. Whelan, 168 U. S. 86; Kalleck v. Deering, 161 Mass. 469.

The only case in which an employee can be considered a vice principal is that in which he is given the entire control of a separate and distinct branch of the master's business, which he is left to manage by himself at his own discretion: Baltimore & Ohio R. R. Co. v. Baugh, 149 U. S. 368; Prevost v. Citizens' Ice, etc., Co., 185 Pa. 617.

OPINION BY MR. JUSTICE BROWN, April 15, 1901:

The plaintiff's statement sets forth a cause of action against the defendants, but his proofs do not support its allegations. They are, that the defendants were, at the time of the injury complained of, contractors and wharf and bridge builders; that, on April 15, 1896, plaintiff was employed by them to work on their steam barge, on the Delaware river, near Petty's Island, in unloading heavy sticks of timber, about twenty feet in length, which were used for piling; that the defendants had erected a steam derrick, with a boom attached to the mast of the vessel, for the purpose of raising the piling; that they had fastened the boom by two ropes on the starboard side, and it was their duty to use sound ropes and proper machinery, so that the plaintiff and other persons would not be injured thereby; that, on April 15, 1896, the plaintiff was working for them, as aforesaid, and was directed by them to stand on the forward deck of the steam barge, on the starboard side, near the pile driver, and receive the piling from the scow and push the same over to the pile driver, and that he had been thus engaged only a short time when the short guy rope, which was rotten and unfit for use, and had long been in such condition, as was well known to the defendants, broke, "and the long guy rope, by reason thereof, swept plaintiff and knocked him into the hold of the vessel." The testi-

·mony relied upon by the plaintiff, taken in connection with that of Peter R. Foley, one of the defendants, and the only witness called by them, conclusively establishes a different state of facts, which are, that the defendants had taken a contract to furnish and drive piles for the American Dredging Company, at Petty's Island, and, in performing this contract, had sent a pile driver and a gang of twelve or fifteen men, under the direction of one named Sprague, to drive the piles; that they had purchased these piles from a man by the name of Taylor, who had agreed to bring them to the place in his own vessel and deliver them over the side of the vessel; that, in performance of his contract, Taylor did bring his own vessel and moored it alongside of, or near, the pile driver; that, with his own tackle and his own men, he began to unload the piles, and Sprague sent four of defendants' gang on board the vessel to assist; that two of them were engaged in measuring the piles in the hold, and the other two, one of whom was Sprague, stood on the deck of the vessel, and, as the piles were delivered over the side, guided them through the water with posts to the pile driver, and that, in the course of this operation, a short guy rope, part of the tackle of Taylor's vessel, broke, allowing the boom to swing around and tighten another rope attached to it, which threw the plaintiff into the hold of the vessel and injured him.

It thus clearly appears that the injury of the employee did not result from any unsafe appliance or the use of any defective tool furnished by his employers. In the course of his employment, when on a vessel belonging to another, and assisting to unload material purchased from the owner of the vessel, he was hurt, not by any tool that he was using, but because the breaking of one rope having led to the tightening of another, in the way of which he happened to be, and, having been caught by it, he was thrown into the hold of the barge. Even if the employers knew that their employee would go upon this vessel for the purpose of assisting in unloading the piles purchased by them from its owner, they were not bound to inspect the ropes which he not only did not use, but which they must have known he would not. That the employers ought to have anticipated that a short guy rope in the vessel might break; that its breaking would lead to the tightening of a larger one;

that their employee, at the time of the tightening of this larger rope, might happen to be in its way; that he might be caught by it, and that he might, by being so caught, be thrown into the hold and injured, may consist with possibilities, but certainly not with the probabilities of danger against which it is the duty of the employer to protect the employed.

It is contended, however, that Sprague, as the superintendent of the appellees, knew the rope was defective, and that, as his knowledge was their knowledge, his negligent act in placing the appellant in dangerous proximity to it was theirs, for the consequences of which they are liable. If he was not the vice principal or representative of the employers, we need not further discuss the question of their liability if he had been. The different branches of the appellees' business were building structural iron work, bridge building, wharf building, and pile driving. Sprague, so far as is disclosed by the testimony, did not have charge of any one of these branches with entire and absolute control over it. The execution of a particular piece of work—the driving of piles at Petty's Island—had been committed to him; and ten or twelve men, with a pile driver, were placed in his charge. He may have been the superintendent for his employers, as termed by the plaintiff and his witnesses, but he was superintendent only for this special piece of work, and, really, but the foreman of the men employed to do it. In the prosecution of business such as the appellees were engaged in, particular pieces of work are, of necessity, constantly assigned to particular sets of workmen, who can satisfactorily do the work only when they are properly directed; but such direction is very different from superintendency of the whole business, or any particular branch of it, by one to whom the employer has committed the entire charge of it. No matter by what title called by those under him, and though he may have power to employ and discharge them, and, in directing them in their work, hold in his hands plans and specifications, the man selected by his employer simply to direct a set of men in their performance of a special piece of work is their fellow workman, generally and properly known as their foreman. For the consequences of his incompetency, his employer must respond to his coemployee; but the risk of his negligence is assumed by those who work with him. No incompetency of Sprague is charged, and his negligence, if he

was negligent, was his own, and not that of his employers. He was not acting for them as their representative when the accident occurred; he was working for them. To have bound them by his negligence, his relation to them must have been that so clearly defined in Prevost v. Citizens' Ice, etc., Co., 185 Pa. 617 : "A vice principal for whose negligence an employer will be liable to other employees must be either, first, one in whom the employer has placed the entire charge of the business, or of a distinct branch of it, giving him not merely authority to superintend certain work, or certain workmen, but control of the business, and exercising no discretion or oversight of his own : New York, Lake Erie & Western R. R. Co. v. Bell, 112 Pa. 400; or secondly, one to whom he delegates a duty of his own which is a direct, personal, and absolute obligation, from which nothing but performance can relieve him : Lewis v. Seifert, 116 Pa. 628; Ross v. Walker, 139 Pa. 42; Prescott v. Ball Engine Co., 176 Pa. 459."

We need add nothing more to make it plain that a verdict for the appellant could not have been justified. The court could not have avoided the direction given to the jury, and the judgment is affirmed.