# Feeney *v.* Abelson, Appellant.

*Negligence—Master and servant—Vice principal—Fellow servant—Act of June 10, 1907, P. L. 523.*

1. In an action by an employee against his employer, the owner of a junk yard, to recover damages for personal injuries, plaintiff is not entitled to recover where the evidence shows that the accident was caused by the negligence of the driver of a team of the defendant; that such driver was foreman of the yard during the defendant's absence only, but that at the time of the accident the defendant was on the

premises and at the immediate place of the accident a few minutes after it occurred. In such a case even if the driver had been the foreman at the time of the accident the plaintiff could not fix liability upon the defendant, if it appears that the negligent act of the driver was an act done in performance of the ordinary work of a fellow servant of the plaintiff.

2. Where a manager or vice principal undertakes work in simple co-operation with other servants, and upon precisely the same footing with them, he becomes for the time being a mere fellow servant with them acting as such, and if in the performance of such work he negligently injures another servant, the latter cannot recover damages from the master for the injuries sustained.

3. The Act of June 10, 1907, P. L. 523, was not intended to impose liability upon an employer except in the case of results happening through the exercise of superintendency. The consequences of the negligence of the persons of the classes named in the act are visited on the employer because such negligence is that of a representative of the employer, the vice principal, as to the particular transaction. The statute does not cover the case of coemployees engaged in the accomplishment of a common object, where the negligence of one results in injury to another.

Argued Oct. 27, 1911. Appeal, No. 191, Oct. T., 1911, by defendant, from judgment of C. P. Blair Co., June T., 1911, No. 136, on verdict for plaintiff in case of Christopher Feeney v. A. A. Abelson. Before Rice, P. J., Henderson, Morrison, Orlady, Head, Beaver and Porter, JJ. Reversed.

Trespass to recover damages for personal injuries. Before Baldrige, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $821.84. Defendant appealed.

*Error assigned* amongst others was in refusing binding instructions for defendant and in overruling defendant's motion for judgment n. o. v.

*W. C. Fletcher,* with him *Isaiah Scheeline,* for appellant.—There was no pretense on the part of the plaintiff

that the defendant was away from the yard that day. On this question there was no issue for the jury. In this respect the case is similar to Greenway v. Conroy, 160 Pa. 185; Schley v. R. R. Co., 227 Pa. 494; Vant v. Roelofs, 217 Pa. 535.

It is the character or nature of the act of the employee which causes the injury that determines the liability of the employer: McGrath v. Thompson, 231 Pa. 631; King v. McClure, 222 Pa. 625.

*Thomas H. Greevy*, with him *E. G. Brotherlin*, for appellee.—Solomon Abelson was the foreman or person in charge or control of, or directing the particular work in which the plaintiff was engaged at the time of the injury: King v. McClure, 222 Pa. 625; McGrath v. Thompson, 231 Pa. 631.

OPINION BY HENDERSON, J., March 1, 1912:

The defendant was the owner of a junk yard in which was stored a quantity of scrap and railroad iron. The plaintiff worked for him several years and was so employed at the time of the accident, out of which the action arose. The injury complained of was received while the plaintiff and two other employees of the defendant were transferring a steel beam from one part of the yard to another. The beam was eighteen or twenty feet long, one-half inch thick and fourteen inches wide in the middle and was narrower at each end. A team of horses was hitched to one end of the beam and by them was moved to the place to which it was to be transferred. A brother of the defendant was driving the team and the plaintiff and another workman followed along behind to release the end of the beam if it came in contact with rails or beams lying at the side of the driveway along which it was taken. In the process of removal a projecting part of the beam caught on a steel rail. The plaintiff alleges that he was directed by the driver of the team to release the beam, that he proceeded to do this and that before he got out of the way the team was

started and his leg was hurt. Whether this hurt was produced by the end of the beam or by the pinch bar which the plaintiff had in his hand does not clearly appear, but there is no doubt that any injury which he received was done while he was releasing or when he had released the beam from contact with the rails. It is charged that the driver of the team, was foreman in the yard and therefore a vice principal and the case has this alleged fact for its foundation. The specific negligence charged is that the driver carelessly and negligently started the horses suddenly before the plaintiff could step aside from danger. The defendant's liability is predicated of his responsibility for the act of the alleged foreman. The defense presented was twofold: It was denied that the driver of the team was foreman of the yard and it was contended that the relation of vice principal was not involved in the act in which the plaintiff was engaged at the time of the accident. Whether the driver was foreman was of course a subject of proof and the burden was on the plaintiff to establish that fact by the preponderance of evidence. An examination of the testimony shows, however, that he failed so to do. It is not pretended that this employee was a general foreman. The plaintiff and his witnesses concur in the statement that when the defendant was around the yard he was the "boss," that when he was there he gave the orders and had charge of the work and that it was only when he was away at times that Solomon Abelson was the "boss"; and the evidence is not contradicted nor disputed that the defendant was on the premises at the time of the accident and at the place within a few minutes after it occurred. The uncontradicted evidence on the part of the defense is that the driver was employed to work and not to superintend. The business was not of a magnitude or character requiring a foreman or superintendent while the proprietor was about the premises at least, and it is not alleged in the evidence that any superintendent or foreman or boss exercised any authority or pretended so to do while the owner was about the yard. The plaintiff was not en-

titled, therefore, to the instruction contained in the charge as set forth in the first assignment of error which directed the jury to find whether the defendant was at the yard the day of the accident and whether if he was not there his brother, Solomon, was the foreman in the performance of the work which caused the accident. It is conceded by the learned judge in the charge that if the defendant was on the premises the brother could not be considered a foreman under the evidence and as there was no evidence that he was not there and clear and positive evidence that he was there the jury should have been instructed that the plaintiff had failed to establish the relation of Solomon Abelson as superintendent or foreman on the day of the accident. The case closely resembles Greenway v. Conroy, 160 Pa. 185, in this respect and is ruled by it.

But if it were otherwise and the evidence justified the conclusion that the driver was the "boss" at the yard the work in which the parties were engaged did not involve the application of the principle invoked by the plaintiff. It is the character of the act of the employee which caused the injury which determines the liability of the employer. The rule as stated in McKinney on Fellow Servants, sec. 23, is this: "The true test, it is believed, whether an employee occupies the position of a fellow-servant to another employee or is the representative of the master, is to be found, not from the grade or rank of the offending or injured servant, but it is to be determined by the character of the act being performed by the offending servant by which another employee is injured; or in other words whether the person whose status is in question is charged with the performance of a duty which properly belongs to the master." The same doctrine is thus stated in Shearman & Redfield on the Law of Negligence, sec. 233: "On the other hand the master is not responsible for the negligence of such an agent in the performance of acts which are in no sense part of a master's work and are precisely upon a level with the work of the other servants. When the manager or vice principal undertakes work in simple

co-operation with other servants, and upon precisely the same footing with them, he becomes for the time being, a mere fellow-servant with them, acting as such." This view of the law was approved in Ross v. Walker, 139 Pa. 42. The person put in place of the principal is a vice principal and represents him to the extent that his act is the act of the principal, but this is limited to acts in discharge of the duties which the principal owes to his employees: Ricks v. Flynn, 196 Pa. 263; Miller v. Am. Bridge. Co., 216 Pa. 559; King v. McClure, 222 Pa. 625; Martin v. R. R. Co., 166 U. S. 399; Schott v. Onondaga County Savings Bank, 63 N. Y. Supp. 631; Hussey v. Coger, 112 N. Y. 614; McLaine v. Head & Dowst Co., 71 N. H. 294. The employer does not insure his employees against each other nor is he required to supervise all the details of their work. In the nature of things this would be impossible in operations of any magnitude. He is bound to provide a safe place in which to work, taking into consideration the nature of the employment, and to furnish suitable tools, machinery and appliances, to exercise reasonable care in the employment of competent superintendents and foremen and to give instruction in the use of dangerous tools or machines with which the servant is not familiar, but this responsibility does not extend to the indemnifying of employees for injuries resulting from the negligence of fellow employees. The doctrine of these authorities controls the case before us. The three men engaged in removing the piece of iron were engaged in the same occupation with a common object. Each of them knew what was necessary to be done in so simple and ordinary a transaction. No complaint is made of the team provided by the defendant and the chain by which the team was attached to the beam, nor is it pretended that there was anything inherently dangerous in the operation in which the plaintiff was engaged. He knew the part which he was to perform and so stated. He followed along behind the beam to see that it was not obstructed by the steel rails or beams lying at the sides of the driveway. Another workman was there with

him for the same purpose. Solomon Abelson was the driver who managed the team. What duty had the defendant failed to perform—What care had he omitted to exercise, as a result of which he is to be charged with liability to the plaintiff? It is contended, however, that this liability is created by the Act of June 10, 1907, P. L. 523. This act provides that the negligence of a fellow servant of the employee shall not be a defense in an action brought to recover damages from an employer for an injury suffered where the injury was caused or contributed to by any of the following causes: ". . . . the neglect of any person engaged as superintendent, manager, foreman, or any other person in charge or control of the works, plant, or machinery; the negligence of any person in charge of or directing the particular work in which the employee was engaged at the time of the injury or death; the negligence of any person to whose orders the employee was bound to conform, and did conform, and, by reason of his having conformed thereto, the injury or death resulted." The act covers other defects and omissions but they are not material in the determination of the present question. The portion of the statute which the plaintiff seeks to apply to the facts of his case is the second clause above quoted relating to the negligence of any person in charge of or directing the particular work. This clause is in pari passu with the first clause above quoted but extends the application of the principle to a larger class of cases. They both relate, however, to a situation in which there is the relation of superior and inferior of an employee and another exercising control and directing the manner in which the action shall be performed. It was not intended that liability should be created except in the case of results happening through the exercise of superintendency. The consequences of the negligence of the persons of the classes named are visited on the employer because such negligence is that of a representative of the employer—the vice principal as to the particular transaction. The statute does not cover the case of coemployees engaged in the accom-

plishment of a common object where the negligence of one results in injury to another. That this is so appears not only from the text of the statute but from the decision in McGrath v. Thompson, 231 Pa. 631, where the doctrine of Ross v. Walker, 139 Pa. 42, was applied. The case arose after the passage of the act of 1907 and was argued in the Supreme Court more than three years thereafter. While no reference is made in the opinion to this statute we may well assume that it was not overlooked. It is to be observed, moreover, that there is no evidence in the case to show that even if Solomon Abelson had been the foreman he directed the manner in which the work should be done by the plaintiff, or the place in which he should stand in doing it. With the large and varied experience which the plaintiff had in the yard in the handling of such material he was certainly as well able to judge of the proper manner of doing the thing he was called on to do as was the driver of the horses, and much more so if all of the evidence be taken into consideration. There was no restraint, therefore, on the plaintiff's judgment as to the manner in which the beam should be freed from the obstruction and he was bound to exercise care in the adoption of a method of doing the work. Certain it is that the driver in starting up the team which is the negligence complained of was not acting as a foreman or vice principal but obviously in the capacity of a coemployee with the other two men who were taking part in removing the piece of iron. Under the evidence, therefore, and in the light of the legal principles involved the defendant was entitled to an affirmation of his fourth point which was a request for binding instructions. As this point was reserved, however, the same question arose on the rule for judgment non obstante veredicto, and judgment should have been entered for the defendant on that rule. We need not consider the other assignments of error.

The judgment is reversed and judgment is now entered for the defendant.