# Easley *v.* Pennsylvania Railroad Company, Appellant.

*Negligence—Railroads—Grade crossings—"Stop, look and listen"—Failure to see that train was moving.*

If a person approaches a grade crossing with an unobstructed view in broad daylight, and stops and looks and sees a train a very short distance away and goes upon the crossing without further attention to the train, and is struck by it, he cannot allege as his excuse for going upon the track that he thought the train was standing still, where it appears that if he had looked properly and carefully he would have seen that the train was in motion.

Argued Oct. 10, 1912. Appeal, No. 116, Oct. T., 1912, by defendant, from judgment of C. P. Armstrong Co., June T., 1911, No. 216, on verdict for plaintiff in case of William C. Easley v. Pennsylvania Railroad Company. Before Fell, C. J., Brown, Mestrezat, Potter, Elkin, Stewart and Moschzisker, JJ. Reversed.

Trespass to recover damages for personal injuries. Before Patton, P. J.

The circumstances relating to the accident are set forth in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $3,000. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Orr Buffington,* with him *O. W. Gilpin,* for appellant,

cited: .Walsh v. R. R. Co., ·222 Pa. 162; Hoffman v. Penna. R. R. Co., 215 Pa. 62.

*C. E. Harrington,* with him *Austin Clark* and *R. L. Ralston,* for appellee, cited: Coolbroth v. Penna. R. R. Co., 209 Pa. 433; Calhoun v. Penna. R. R. Co., 223 Pa. 298.

OPINION BY MR. JUSTICE BROWN, January 6, 1913:

The motion for judgment of nonsuit should have prevailed in this case, and the learned trial judge erred in refusing the prayer that a verdict be .directed for the defendant. Grant avenue, in the borough of Kittanning, runs north and south, and the tracks of the defendant company are laid longitudinally upon it. Campbell street crosses it at right angles. On the morning of October 28, 1910, in broad daylight, the appellee was driving westward on Campbell street, and, as he was crossing the first, or northbound, track of the appellant, on Grant avenue, the rear of the tender of an engine, which was pulling a train of freight cars, collided with his team, the collision resulting in the injuries for which damages are claimed in this action. The novel excuse of the appellee, to relieve himself of the charge of contributory negligence, clearly disclosed by his own testimony, was not that he had stopped, looked and listened and had not seen the approaching train; his plea is that when he stopped and looked, he saw the cars a very short distance south of him, but thought they were standing still, though he had a clear and unobstructed view of them. He stopped his horse within two or three feet of the northbound track and admits he saw the train; but, having heard neither whistle nor bell, he assumed that it was not in motion, and proceeded to cross over the track. This is unavailing. The train admittedly was in motion when he first saw it, and, while there is nothing in his testimony, or that of any witness called by him, as to its rate of speed, the uncontradicted testi-

mony of the engineman, the fireman and the conductor was that it was moving at about six miles an hour. Even if the ringing of the bell may have been a question for the jury, the appellee gave no valid excuse for not seeing the coming of the train. That he did not see its approach when in dangerous proximity to him, as he started to cross the track, was due entirely to his own carelessness. This conclusively appears from the following taken from his testimony: "Q. From the time you saw it until it struck you, you didn't know that it was moving? A. No, sir, at first I didn't know that it was moving, it didn't ring any bell nor blow any whistle, nor make any noise........Q. After you saw the train down there you thought that it was not coming toward you? A. Yes, sir. Q. And for that reason you drove on the track? A. Yes, sir. Q. And paid no attention to it because you felt that you were safe? A. I did. Q. You were very much surprised when you found that it was upon you? A. That is so. Q. You thought that the train was standing there and wouldn't move and then you drove right on the track? A. Yes, sir, I thought it was not in motion and I could cross the track safely without it coming on me. Q. You didn't pay any further attention to it? A. No, I didn't until it was quite close to me, when I coudn't avoid it."

When the appellee first saw the train he could not have been looking in its direction with any degree of care, or he would surely have seen that it was coming towards him, for it was but a slight distance from him. Instead of a careful look he must have given but a careless glance. The law requires the former and will not excuse the latter. He admits that he saw the train, and, because he thought it was standing still, paid no further attention to it until it was so close to him that he could not avoid it. These are his own words, frankly confessing a degree of carelessness in crossing a railroad track, which imperatively calls for a reversal of the judgment. What the appellee must have seen, if he had exercised

ordinary care in looking, he is conclusively presumed to have seen, and the excuse which he gives is no better than if he had admitted he had not looked at all. The case is within the rule announced in Paul v. Philadelphia & Reading Railway Company, 231 Pa. 338. The first and fourth assignments of error are sustained and the judgment is reversed.